GENERAL CONFERENCE OF THE FREE CHURCH OF AMERICA, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3902–78X.    Filed February 28, 1979.

Paul R. Stout (an officer), for the petitioner.
*Ray K. Kamikawa*, for the respondent.

OPINION

FORRESTER, *Judge:* This is an action for declaratory judgment pursuant to section 7428(a).[1] Petitioner General Conference of the Free Church of America, filed Form 1023, an Application for Recognition of Exemption, on December 21, 1976, with the District Director, Chicago, Ill. Therein, petitioner requested that an administrative determination be made that its organization qualified for exemption from Federal income taxation under section 501(c)(3).

On January 17, 1978, respondent issued a final adverse determination letter which denied petitioner's exemption. Respondent determined that petitioner's organizing document neither limited its purposes as provided by section 501(c)(3) nor limited its distribution of assets upon dissolution solely to organizations described in section 501(c)(3) and that petitioner failed to describe its activities and purposes in sufficient detail.

Following this final adverse determination petitioner filed its petition for declaratory judgment with this Court on April 13, 1978. In preparation for submission of his case, respondent made several abortive efforts to obtain petitioner's agreement to the proposed stipulation of the administrative record. On July 21, 1978, respondent filed a motion for order to show cause why this case should not be submitted on the administrative record.

In response, on August 9, 1978, petitioner filed its answer to the order to show cause. A hearing was ordered on August 30, 1978, directing petitioner to show cause as to why this case should not be submitted on the basis of the administrative record filed by respondent. Petitioner failed to appear at the hearing

---

[1]Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954.

but did submit a written statement of its position in lieu of such attendance, as provided under Rule 50(c), Tax Court Rules of Practice and Procedure. Therefore, an ex parte hearing was held under Rule 130(b) that resulted, after due consideration, in the granting of respondent's motion.

The issues presented for our decision are whether petitioner's organizing document satisfied the organizational and operational tests of section 501(c)(3) and whether a legitimate constitutional basis exists for petitioner to refuse respondent's inquiries with respect to its activities, operations, and purposes.

This case was submitted for decision on the basis of the administrative record which is incorporated herein by this reference. Any evidentiary facts or representations contained therein are assumed to be true for the purposes of this proceeding. The following is disclosed from the administrative record.

Petitioner General Conference of the Free Church of America had its first convention on December 23, 1973, and was incorporated as a religious corporation under the laws of the State of Illinois on February 19, 1976. At its first convention, inter alia, the bursar was instructed to open a checking account at a bank in petitioner's name for the deposit and payment of petitioner's respective receipts and disbursements. Its organizing document was also adopted at this meeting. Said document outlined petitioner's purposes and activities and served as its articles of federation. It stated as follows:

### ARTICLES OF FEDERATION

1. The General Conference of the Free Church of America is an association of autonomous local churches that have agreed to organize for the following purposes:

A. To aid in forming local congregations of the Free Church of America, and to promote their growth and development.

B. To protect and foster freedom of religion for all persons everywhere.

C. To provide guidance, help, and encouragement to all who seek to engage in the aforementioned activities.

D. To serve as a clearing house for ideas and as a communications center for those engaged in the work of the Free Church of America.

2. Membership in the GC/FCA shall be open to any church or any group of persons wishing to form a church, who shall affirm their acceptance of the above purposes. Any church holding such membership shall be entitled to use the words "Free Church of America" or the initials "FCA" in its name or literature.

3. No member church shall be assumed to be in agreement with the beliefs or practices of any other member church, or be held accountable for such.

4. Every member church shall be entitled to communicate with the General Conference in strictest confidence; and the General Conference shall not divulge any information about any local church without that church's express consent.

5. The affairs of the General Conference shall be conducted by convention, held once in each calendar year. Each member church is entitled to one voting delegate at the convention. The chief administrative officer of the General Conference shall be the Executive Director, who shall have full sacerdotal powers, shall be elected by the convention, and shall serve until the next convention.

6. The Executive Director shall have the power to ordain ministers of the Free Church of America, upon finding that the applicant is worthy of said ordination. In accordance with the principle of reciprocity and of freedom of religion, the General Conference accepts the validity of the ordination of the ministers of its member churches, by whomever bestowed.

7. Any associated member church may at its option choose to accept the Doctrine & Discipline of the Free Church of America in place of or in addition to its own rituals, beliefs and procedures. Acceptance of the FCA D&D is not a requirement for membership in the General Conference, or for ordination as a minister.

8. Individual clergymen, whether ordained by the Free Church or by another, may hold personal membership in the General Conference; but may not vote in convention unless they represent a member church.

9. The General Conference shall not inquire into the affairs of any member church or of any personal member, except insofar as its/his activities may impinge upon the religious freedom of another.

10. Membership in the General Conference may be terminated by any church or personal member upon request. The General Conference may remove any church or personal member from membership, upon a finding by the Executive Director that said church or personal member has acted in a manner detrimental to freedom of religion.

On Form 1023, Application for Recognition of Exemption, petitioner described the range of its activities in the following manner:

Preservation and propagation of the religious beliefs and doctrines of its members; conducting retreats, seminars, convocations and other religious activities and exercises; conferring of ministerial ordination on persons qualified to perform ministerial duties according to our beliefs and practices; chartering of churches and religious orders for wider diffusion of our beliefs and religious doctrines; advising, assisting, and sustaining ministers and churches in the fulfillment of their religious vocation; and maintaining a link of communication among the members for mutual aid, comfort, and the advancement of our religious beliefs and usages.

In its application, petitioner described the sources of its financial

support as contributions from members and friends but failed to disclose any supporting financial data. Moreover, petitioner did not supply respondent with an analysis of such financial support on a yearly basis as is required on Form 1023.

Because of these and other deficiencies in petitioner's application, respondent made several attempts to obtain additional information. In response, petitioner cited the 1st, 4th, 5th, 9th, 13th, and 14th Amendments to respondent and argued that such questions as proposed by respondent were a violation of these constitutional rights. To make its answers even more cryptic, petitioner would frequently cite the Bible as support for its constitutional objection.[2]

In one missive respondent noted that petitioner's articles of

---

[2]2. How do you intend to solicit new membership? You may submit descriptive or promotional material used.

2. By word of mouth. Mark 16:15. Acts 5:42.

\* \* \* \* \* \* \*

4. Upon becoming a member of your organization, what are the "doctrines and usages" members will be required to agree to and to accept?

4. Objection.

5. Describe the "rules and usages" which your organization uses to appoint your trustees.

5. Objection. I Tim. 3:1–7, 11.

\* \* \* \* \* \* \*

15. Describe the religious beliefs which your organization follows. Is there a series of principles, code of conduct, or system of moral practice directly resulting from adherence to the beliefs of your religion which govern the behavior of your members? If so, describe in detail.

15.   (a) Beliefs: Objection.

    (b) Yes.

    (c) Describe principles: Objection. Mark 12:17.

16. What is the name of the text in which your religious doctrines and precepts are found? Provide a sample copy, if available.

16. Objection. 1 Cor. 2:9–13. 2 Cor. 3:6.

\* \* \* \* \* \* \*

18. Does your organization study or preach various basic principles gathered from other religions?

18. Objection. 1 Tim. 4:6–7, 16. 2 Tim. 3:14. Titus 3:9. Matt. 6:7–8.

\* \* \* \* \* \* \*

21. Provide detailed financial statements of actual income and expenditures for the period December 23, 1973, through March 30, 1977. The statement should clearly identify all sources of receipts and the purposes for which all expenditures were made. In addition, with respect to gifts, grants, contributions and membership fees the statement should show the name of, and amount received from, each person from whom you received amounts totalling more than 2 percent of your total support.

21. Objection. Matt. 6:1–4.

22. Please provide a detailed budget for calendar years 1977 and 1978, including income and expenditures.

22. Objection. Matt. 6:25–34. Matt. 10:8–11. Mark 6:8. Luke 9:3. Luke 10:4. Luke 22:35.

\* \* \* \* \* \* \*

25. Furnish specific information concerning prescribed courses of study and training that persons will take in order to qualify for ordination as ministers through your organization.

25. Objection. 1 Cor. 1:17–31; 2:1. Mark 3:13–14.

federation did not provide for the distribution of assets upon dissolution and that the purposes as set forth in the articles exceeded the scope of section 501(c)(3). To remedy these matters, respondent suggested that petitioner amend its articles to comply with section 501(c)(3) and deferred action on petitioner's application for 21 days to enable petitioner to submit documentation of such compliance.[3]

Respondent stated in his communique to petitioner that if it failed to provide the requested information in a timely manner, it would be considered by the Internal Revenue Service as a failure to take all reasonable steps to secure the ruling requested. Petitioner acknowledged said defects in its articles but chose to delay any action on the amendment of its articles until its next annual meeting.

Respondent issued a final adverse determination on January 17, 1978, affirming a prior adverse determination issued on September 6, 1977, which denied petitioner tax-exempt status. The following reasons were stated by respondent as the basis for the adverse ruling.

Your organizing document does not limit your purposes to those permitted by section 501(c)(3) of the Code. Your organizing document does not limit the distribution of your assets upon dissolution solely to organizations described in section 501(c)(3). You have not described your activities and purposes in sufficient detail. Accordingly, you are not organized and operated exclusively for exempt purposes within the meaning of section 501(c)(3) of the Code.

In the final adverse determination letter, petitioner was informed, inter alia, of his right to petition this Court for a declaratory judgment under section 7428 and was instructed to contact the Clerk of the Court for a copy of this Court's rules.

The threshold question in this action for declaratory judgment is whether petitioner's organizing document meets the organizational and operational tests of section 501(c)(3). Section 501(a)

---

26. Do you charge a fee or other form of payment for chartering churches or issuing ordination certificates? If so, furnish details.

26. Objection. 1 Cor. 9:13–14. Acts 8:18–20.

[3] It is unclear from the administrative record why petitioner was allowed 21 days in which to respond; nevertheless, we do not agree with petitioner that this time period was imposed without compelling reason. To the contrary, respondent had a compelling reason for requesting timely compliance in light of the statutory requirement of sec. 7428(b)(2) that he must act on petitioner's request for a determination within 270 days from the date on which such request was made, otherwise petitioner is deemed to have exhausted its administrative remedies.

provides, inter alia, an exemption from Federal income tax for an organization described under section 501(c)(3).[4] That section enumerates three conjunctive requirements which an organization devoted to religious purposes must satisfy if it hopes to qualify for tax exemption: (1) The organization must be organized and operated exclusively for religious purposes or in conjunction with other exempt purposes; (2) no part of its net earnings may inure to the benefit of any private shareholder or individual; and (3) no substantial part of its activities may be devoted to political or lobbying activity.

In the instant case, respondent determined that only the first of these three necessary prerequisites for exemption was violated. If an organization fails to meet either the organizational test or the operational test it is not exempt for purposes of section 501(a). *Levy Family Tribe Foundation v. Commissioner*, 69 T.C. 615, 618 (1978); sec. 1.501(c)(3)–1(a)(1), Income Tax Regs.

The organizational test is described at section 1.501(c)(3)–1(b), Income Tax Regs. An organization is organized exclusively for one or more exempt purposes only if its articles of organization limit the purposes of such organization to one or more exempt purposes and do not expressly empower the organization to engage in substantial nonexempt activities. Sec. 1.501(c)(3)–1(b)(1)(i), Income Tax Regs. The presence of a single nonexempt purpose, if substantial in nature, will destroy the exemption regardless of the number or importance of timely exempt purposes. *Better Business Bureau v. United States*, 326 U.S. 279 (1945). In addition, an organization is not organized exclusively for one or more exempt purposes unless its assets are dedicated to an exempt purpose. Sec. 1.501(c)(3)–1(b)(4), Income Tax Regs.

It is respondent's contention that petitioner fails the organizational test of section 501(c)(3) because the narrow purposes

---

[4](c) LIST OF EXEMPT ORGANIZATIONS.—The following organizations are referred to in subsection (a):

\* \* \* \* \* \* \*

(3) Corporations, and any community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, testing for public safety, literary, or educational purposes, or to foster national or international amateur sports competition (but only if no part of its activities involve the provision of athletic facilities or equipment), or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual, no substantial part of the activities of which is carrying on propaganda, or otherwise attempting to influence legislation, (except as otherwise provided in subsection (h)), and which does not participate in, or intervene in (including the publishing of distributing of statements), any political campaign on behalf of any candidate for public office.

stated in its organizing document have not been adequately described to be considered exempt under that section. Respondent supports this contention with the case of *B.S.W. Group, Inc. v. Commissioner*, 70 T.C. 352 (1978). It appears that respondent has confused the organizational and operational tests. In the *B.S.W. Group, Inc.*, case, the organizational test was not at issue, rather, the relevant inquiry thereunder was the application of the operational test to an organization that provided consulting services primarily to charitable organizations. *B.S.W. Group, Inc. v. Commissioner, supra* at 356. Thus, such case is inapposite to the question at hand.

Nor are we inclined to find, as respondent asserts, that when an exempt purpose is narrowly defined it must be described in detail. Respondent's own regulation provides that the organization's purposes, as stated in its articles, may be more specific than the purposes stated in section 501(c)(3). Sec. 1.501(c)(3)–1(b)(1)(ii), Income Tax Regs. It can be said, therefore, that the restriction of the exempt purpose in petitioner's organizing document is inconsequential so long as it falls within the guidelines of those purposes stated in section 501(c)(3).

While a close reading of petitioner's articles of federation might imply that it may engage, in futuro, in activities that are not exclusively for religious purposes and, thus, is not organized for such purposes, we believe that such inferences are unsupported by the evidence in the administrative record. Petitioner was organized to assist the formation of local congregations of the Free Church of America. The concomitant activities it engaged in were to this end. Thus, the mere existence of purposes or powers other than those enumerated under section 501(c)(3), is not fatal per se to the finding that petitioner is not "organized exclusively" for such purposes and we have so held. *Danz Charitable Trust v. Commissioner*, 32 T.C. 469, 477 (1959), affd. 284 F.2d 726 (9th Cir. 1960); *Forest Press, Inc. v. Commissioner*, 22 T.C. 265, 269 (1954).

Within the parameters of the organizational test, respondent also argues that petitioner has made no provision in its organizing document for the proper distribution of assets on dissolution. An organization's assets are considered dedicated to an exempt purpose if upon dissolution such assets would, by reason of a provision in the organization's articles or by

operation of law, be distributed, inter alia, for one or more exempt purposes. Sec. 1.501(c)(3)–1(b)(4), Income Tax Regs.

Under the laws of the State of Illinois, upon the incorporation of any congregation, church, or society, all real and personal property held by any person or trustees for the use of the members thereof, immediately vests in such religious corporation. Ill. Ann. Stat. ch. 32, sec. 172 (Smith-Hurd 1970). In petitioner's State of incorporation, therefore, the title to church property is in the corporation and neither the trustee nor members have any beneficial ownership or personal or private interest in the property, notwithstanding the trustees control or custody over such property. See *People v. Braucher*, 258 Ill. 604, 101 N.E. 944 (1913); Ill. Ann. Stat. ch. 32, sec. 170 (Smith-Hurd 1970).

The assets of a religious corporation in the process of dissolution must be distributed in accordance with Illinois law. Ill. Ann. Stat. ch. 32, sec. 163a44 (Smith-Hurd 1970). Such law provides, inter alia, that assets held for religious use shall be transferred to one or more domestic or foreign corporations, societies, or organizations engaged in activities substantially similar to those of the dissolving corporation pursuant to a plan of distribution. Any remaining assets may be distributed to the organization's members as specified in the plan of distribution.

Section 1.501(c)(3)–1(b)(4) provides, in pertinent part:

(4) *Distribution of assets on dissolution.* An organization is not organized exclusively for one or more exempt purposes unless its assets are dedicated to an exempt purpose. * * * However, an organization does not meet the organizational test if its articles or the law of the State in which it was created provided that its assets would, upon dissolution, be distributed to its members or shareholders.

The laws of petitioner's State of incorporation require that upon its dissolution assets held for religious purposes are to be distributed to organizations with substantially similar purposes. This distribution notwithstanding, we note that any remaining assets could be distributed to petitioner's members in violation of the organizational test under section 501(c)(3). Such assets would revert to petitioner's trustees and inure to their economic benefit.

Since petitioner has neither adopted a provision in its articles to circumvent this occurrence nor irrevocably committed disposition of the assets to another qualifying organization if it were to

dissolve, such defect is fatal to petitioner's application for tax-exempt status. Accord, *Calvin K. of Oakknoll v. Commissioner*, 69 T.C. 770, 772 (1978). The burden of proof is upon petitioner to prove that respondent's denial of exempt status is incorrect. *Hancock Academy of Savannah, Inc. v. Commissioner*, 69 T.C. 488 (1977); Rule 217(c)(2)(ii), Tax Court Rules of Practice and Procedure. In this regard, petitioner has failed and we so hold.

Petitioner argues that the administrative record hereunder omits its amended articles of federation that comply with the organizational test. On brief, petitioner admits that it informed respondent of this evidence on June 18, 1978. However, the final adverse determination letter is dated January 17, 1978, some 5 months prior to such alleged amendment. The only relevant evidence that we may consider in the instant case is that submitted under the administrative record. *Church In Boston v. Commissioner*, 71 T.C. 102 (1978); *Houston Lawyer Referral Serv. v. Commissioner*, 69 T.C. 570, 577–578 (1978).

It is also petitioner's contention that evidence of such efforts to comply with respondent's suggestion to amend its articles of federation was improperly excluded by this Court since respondent argued, and this Court relied, on definitions and procedures dealing with the qualification of pension plans found in Rules 210 and 217, Tax Court Rules of Practice and Procedure. We find no merit in this contention. Petitioner was sufficiently informed in its final adverse determination letter that a copy of this Court's Rules of Practice and Procedure could be readily obtained from the Clerk of the Court. For whatever reasons, we must conclude that petitioner chose not to obtain such Rules because its contention is buttressed by reference to the Rules of Practice and Procedure prior to the amendments for title XXI which became effective July 1, 1977. Such amendments provided, inter alia, procedural guidelines for two additional declaratory judgment actions, authorized by sections 7428 and 7477, relating to exempt organization status and transfers of property from the United States, respectively.

Petitioner's failure to satisfy the organizational test is determinative of its tax-exempt status under section 501(c)(3). However, respondent also maintains that petitioner has not met the other disjunctive test necessary for a finding of tax exemption. This is the operational test described at section 1.501(c)(3)–1(c), Income Tax Regs. Generally, an organization

will be regarded as "operated exclusively" for one or more exempt purposes only if it engages primarily in activities which accomplish one or more of such exempt purposes specified in section 501(c)(3). Sec. 1.501(c)(3)–1(c), Income Tax Regs.

Respondent argues that when an organization submits an application for exemption, ostensibly based on religious grounds, he is required to make inquiries and gather information to determine whether the organization's activities are legal and consistent with public policy. See sec. 1.501(c)(3)–1(b)(1)(v), Income Tax Regs.; Rev. Proc. 77–21, 1977–1 C.B. 586. Petitioner contends that it described its activities in sufficient detail, within the boundaries of the First Amendment to the Constitution, to demonstrate that it is both a religious organization and a church. Petitioner also charges that respondent acted with bias and religious prejudice in the refusal of its tax exemption because respondent demanded information concerning petitioner's religious beliefs which are protected by the First Amendment.

We are not asked to decide in the instant case whether an existing commercial purpose is petitioner's predominant raison d'etre and, consequently, overcomes any other exempt purposes. Cf. *Pulpit Resource v. Commissioner*, 70 T.C. 594 (1978). Rather, the parties would have us determine whether petitioner, as a purported religious organization, has an absolute constitutional right to determine the quality and quantity of the information it tenders respondent in seeking an exemption.

We must decide this question in the respondent's favor. We believe that the right of an organization to declare what information is or is not relevant in a determination of its tax-exempt status is decidedly beyond the pale of the First Amendment's guarantee of freedom of religion. It is well settled that the First Amendment right to free exercise of religion is not absolute and that indirect and incidental burdens thereon are constitutionally proper. *Johnson v. Robison*, 415 U.S. 361 (1974); *Gillette v. United States*, 401 U.S. 437 (1971); *Coomes v. Commissioner*, 572 F.2d 554 (6th Cir. 1978), affg. an unpublished order of this Court.

Furthermore, since the Government may constitutionally tax the income of religious organizations, it follows that the Government may decide not to exercise this power and grant reasonable exemptions to qualifying organizations while contin-

uing to tax those who fail to meet these qualifications. *Parker v. Commissioner*, 365 F.2d 792, 795 (8th Cir. 1966), affg. sub nom. *Foundation for Divine Meditation, Inc. v. Commissioner*, T.C. Memo. 1965–77. An exemption renders the recipient organization a tax benefit which is thus a matter of legislative grace and not a constitutional right. Cf. *Better Business Bureau v. United States*, 326 U.S. 279, 283 (1945); *New Colonial Ice Co. v. Helvering*, 292 U.S. 435, 440 (1934). Nevertheless, a denial of such benefits granted to others of essentially the same class may well rise to the level of an unconstitutional discrimination. See *Golden Rule Church Association v. Commissioner*, 41 T.C. 719, 729 (1964).

In the instant case, we believe that the administrative record clearly shows that respondent acted in an impartial, unbiased, and nondiscriminatory manner in his refusal of petitioner's requested tax exemption. Respondent's inquiries were pertinent to determining petitioner's status as a religious organization. No illegal discrimination in the refusal to grant the exemption has been demonstrated by petitioner, nor has it shown that the refusal was in any manner based upon a judgment of its religious tenets. Indeed, the only determination made by respondent was that petitioner failed to supply the requisite information upon which an exemption might be granted.

Since no constitutional violations were found to exist, we need not decide several irrelevant questions raised by petitioner, to wit: the respondent's commission of libel against petitioner; the validity of several inapposite cases which petitioner attempts to distinguish from the instant case; and the characterization of a speech made by respondent ex cathedra, which petitioner argues is relevant support for the proposition that respondent, and not petitioner, has the burden of proof hereunder.

These matters aside, the parties discuss at some length on brief the efficacy of petitioner's responses couched in terms of biblical quotations. Respondent characterizes such responses as a scheme to avoid disclosing petitioner's true operations and activities and posits that petitioner has no sincere belief in the Bible. While petitioner's answers may be interpreted as evasive, we condemn such arguments as unduly harsh and without proper foundation, since the record discloses that petitioner's representative, an ordained minister, considers such quotations as support for petitioner's credo. The administrative record is

devoid of any evidence of petitioner's belief or disbelief in the Bible and this Court refuses to be an arbiter of such belief. Nevertheless, we find that petitioner's answers to respondent's questions are, to a great extent, incomplete and ambiguous.

Therefore, after a careful review of the entire administrative record and for all of the above reasons, we hold that petitioner's organizing document fails to satisfy the organizational test of section 501(c)(3) and, for want of information, also fails to satisfy the operational test of that section.

Petitioner further argues that a legitimate constitutional basis exists for refusing to answer respondent's inquiries with respect to its activities, operations, and purposes. We do not agree. Petitioner cites no cases in support of this argument. Moreover, petitioner's constitutional objections are frivolous. We have already determined that petitioner's First Amendment right to freedom of religion was not violated. Nor was petitioner descriminated against in the refusal of its application for tax exemption. Thus, no legitimate constitutional basis exists for petitioner to refuse respondent's inquiries with respect to its activities, operations, and purposes.

Accordingly, we hold that respondent's determination that petitioner was not organized and operated exclusively for religious purposes and thus is not qualified for exemption from taxation pursuant to section 501(a) as an organization described in section 501(c)(3) is sustained. Our holding does not amount to a Draconian result in the instant case because petitioner is not precluded from filing a new application incorporating its alleged amendments to its articles of federation. *Houston Lawyer Referral Service, Inc. v. Commissioner*, 69 T.C. 570, 577–578 (1978).

*An appropriate decision will be entered.*