DANIEL M. KELLMAN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Kellman v. Commissioner
Docket No. 9314-79.
United States Tax Court
T.C. Memo 1981-615; 1981 Tax Ct. Memo LEXIS 126; 42 T.C.M. (CCH) 1508; T.C.M. (RIA) 81615; October 22, 1981. *126 Held, petitioner did not substantiate the entire amount of the disallowed contributions and/or prove that the donee organizations were qualified under section 170(c)(2) to receive deductible contributions. Held further, petitioner did not substantiate disallowed expenses for medicine and drugs. Daniel M. Kellman, pro se. Wayne R. Appleman, for the respondent. IRWIN
MEMORANDUM FINDINGS OF FACT AND OPINION IRWIN, Judge: Respondent determined a deficiency of $ 297 in petitioner's Federal income tax for 1976. After concessions by respondent, the issues remaining for our decision are (1) whether petitioner is entitled to a deduction for charitable contributions under section 170 [1] and (2) whether petitioner has substantiated certain amounts claimed as a deduction for medicine and drugs under section 213. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioner was a resident of Chugiak, Alaska, at the time the petition was filed in *127 this case. He timely filed a Federal income tax return for the 1976 taxable year. For approximately 6 to 8 months during 1976, petitioner lived near Anchorage with several other persons at 6721 East 11th Avenue, Chugiak, Alaska. Petitioner's mailing and legal address during 1976 and at the time of the filing of the petition with this Court was P.O. Box 383, Chugiak, Alaska. During this period petitioner was employed as the manager of "Paga Joes", a "topless, bottomless" nightclub located in Anchorage. Petitioner listed his occupation on his 1976 Federal income tax return as "warehouser". A checking account in the name of Universal Life Church of Snow was maintained with Peoples Bank and Trust in Anchorage during the year at issue. The mailing address listed on the checks and other bank records was P.O. Box 383, Chugiak, Alaska. The persons authorized to sign checks on the account were petitioner, his brother, Norman Kellman and a Ms. Elizabeth Curry. [2] The organization was unincorporated during 1976. Checks were *128 written on the account maintained in the name of the Universal Life Church of Snow for rent, telephone and utility expenses attributable to petitioner's residence at 6721 East 11th Avenue in Chugiak. [3] Petitioner also made payments toward the purchase and maintenance of a new 1975 Fiat automobile with checks written on the account. [4] Title to the automobile was in petitioner's name. Petitioner obtained a "CHARTER" from the Universal Life Church, Inc. of Modesto, California, dated November 10, 1975. The document is a one page certificate numbered 14,611 which reads: "This is to certify that UNIVERSAL LIFE CHURCH OF SNOW of CHUGIAK State or Province of ALASKA has been granted by Universal Life Church, Inc., Modesto." The Universal Life Church, Inc. was a qualified section 170(c) organization during 1976 but did not possess a group exemption. In 1976, petitioner wrote checks on his personal account payable to the Universal Life *129 Church of Snow totaling $ 1,550. Petitioner produced cancelled checks written in 1976 for contributions to NORML (National Organization for the Reform of Marijuana Laws) in the amount of $ 15.00 and to the ACLU (American Civil Liberties Union, Inc.) in the amount of $ 15.00. Petitioner claimed a deduction for charitable contributions on his 1976 income tax return in the total amount of $ 1,950.60. Respondent's notice of deficiency disallowed this deduction in full. On brief, respondent conceded the deductibility of several miscellaneous cash contributions in the total amount of $ 30.00. The remaining disputed amounts are as follows: Cash Contribution [5]
$ 1,850.00
ACLU
40.60
NORML
30.00
The taxpayer also claimed medicine and drug expenses of $ 75.99 on his 1976 return. Petitioner produced cancelled checks substantiating his purchase of these items totaling $ 41.86.In his notice of deficiency, respondent disallowed the claimed deduction for medicine and drugs because the substantiated amount did not exceed 1 percent of petitioner's adjusted gross income. OPINION The issues for *130 our decision are whether petitioner is entitled to deductions for charitable contributions in excess of the amounts allowed by respondent and whether petitioner has substantiated amounts expended for medicine and drugs in excess of 1 percent of his adjusted gross income. Initially we note that deductions from Federal income tax are matters of legislative grace. New Colonial Ice Co. v. Helvering, 292 U.S. 435 (1934). As such, the burden of proving entitlement to a deduction is upon the taxpayer. Welch v. Helvering, 290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure.
CHARITABLE CONTRIBUTIONS The deductibility of $ 1,920.60 in claimed charitable contributions remains in dispute. We must determine whether the alleged donees are qualified under section 170(c) to receive deductible contributions and, if so, whether petitioner has adequately substantiated the amounts claimed to have been donated to these organizations. Section 170(a) allows as a deduction any charitable contribution which is made within the taxable year. The term "charitable contribution" is defined in subsection (c) as follows: (c) Charitable Contribution Defined.--For purposes of this section, *131 the term "charitable contribution" means a contribution or gift to or for the use of-- (2) A corporation, trust, or community chest, fund, or foundation-- (B) organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes or to foster national or international amateur sports competition (but only if no part of its activities involve the provisions of athletic facilities or equipment) or for the prevention of cruelty to children or animals; (C) no part of the net earnings of which inures to the benefit of any private shareholder or individual. The most substantial of the disputed deductions is a claimed cash contribution of $ 1,850. The parties stipulated that Mr. Kellman wrote checks on his personal checking account payable to the Universal Life Church of Snow totaling $ 1,550. Respondent's position is that petitioner has not substantiated that any amount in excess of $ 1,550 was transferred to the organization and, in addition, that the organization does not meet the requirements of section 170(c)(2). Petitioner argues that the Universal Life Church of Snow is an integral and inseparable part of the Universal Life Church, Inc., of Modesto, *132 California. As such, Mr. Kellman would have us find that that organization's recognized tax exempt status under section 501(c)(3) extends to the purported branch. Although it was stipulated that the Modesto organization was a qualified section 170(c) organization itself during 1976, [6] *133 there was no evidence that it had applied for or received a group exemption. Petitioner's sole evidence was the testimony of his witness, "Bishop" Valiente, a truck driver and the purported Alaska resident agent for the Universal Life Church, Inc. Mr. Valiente testified that the Church considers itself and all its "congregations" to be only one organization. While this may be the viewpoint of Universal Life Church, Inc., it does not suffice to carry petitioner's burden of proof as to the status of the Universal Life Church of Snow for Federal income tax purposes. Thus, we find petitioner has not satisfied his burden of showing that the donee organization is entitled to the benefit of the tax exempt status of the Modesto organization. Except for producing a "CHARTER" from the Universal Life Church, Inc. and stating that he was a minister, petitioner refused to present (on First Amendment grounds) any evidence concerning the organization or operation of the Universal Life Church of Snow. Mr. Kellman steadfastly asserted that the church's affairs were not at issue here and that this Court was not entitled to inquire into such matters. We have held, however, that a taxpayer cannot simultaneously claim a deduction from Federal income tax and a First Amendment privilege as to the same operative facts. The right of an organization or the individual controlling it to declare that information is or is not relevant in a determination of the status of that organization for Federal income tax purposes is clearly beyond the limits of the First Amendment's guarantee of freedom of regulation. Bronner v. Commissioner, 72 T.C. 368 (1979); General Conference of the Free Church of America v. Commissioner, 71 T.C. 920 (1979). At trial respondent introduced the subpoenaed checking account records of the Universal *134 Life Church of Snow for 1976. This evidence shows that substantial amounts of the organization's funds were used to pay rent, telephone and other utility expenses attributable to petitioner's personal residence. In addition, its funds were used to make payments toward the purchase and maintenance of a new 1975 Fiat automobile registered in petitioner's name. [7] Presented with this compelling and uncontradicted evidence we reach the required conclusion that the Universal Life Church of Snow was not organized and operated exclusively for religious purposes as required by section 170(c)(2). Rather, it existed merely to transform petitioner's nondeductible personal living expenses into deductible charitable contributions. [8] *135 Thus, we find that the Universal Life Church of Snow does not meet the requirements of section 170(c) and, accordingly, respondent's determination disallowing the claimed contribution to that organization is sustained. [9] Mr. Kellman also claimed a deduction in the amount of $ 30.00 for a contribution to NORML. Petitioner produced a receipt in the form of a cancelled check payable to that organization in 1976 in the amount of $ 15.00. However, NORML was not an organization recognized *136 by respondent as a qualified donee [10] in 1976 and petitioner has not offered any evidence demonstrating that NORML meets the requirements of section 170(c). Thus, we sustain respondent's disallowance of the entire claimed deduction. The final disputed charitable contribution is petitioner's deduction of $ 40.60 for a contribution to the ACLU. Although certain branches of that organization were recognized by respondent as qualified to receive donations deductible to the donee in 1976, petitioner has not presented any evidence as to which branch his contributions were made nor substantiated the amount of his contribution in excess of $ 15.00. Thus, we are unable to conclude that respondent's disallowance of the deduction was in error. MEDICINE AND DRUGS The final issue for our determination is whether petitioner is entitled to a medical expense deduction attributable to his purchase of medicine and drugs in 1976. Such expenses are deductible under section 213 only if, and to the extent (1) they exceed 1 percent of adjusted gross income and (2) that excess together with the taxpayer's remaining medical expenses exceeds 3 percent of adjusted *137 gross income. [11]
Petitioner listed expenses for medicine and drugs totaling $ 75.99 on Schedule A of his 1976 Federal income tax return. After subtracting $ 55.75 (1 percent of his adjusted gross income), he arrived at a net deduction of $ 20.24. Petitioner provided cancelled checks substantiating $ 41.86 of these expenses but failed to produce any evidence explaining the additional amount claimed. [12] *138 The sole argument for deductibility urged by petitioner is that the claimed amount is reasonable in light of his other uncontroverted medical expenses. [13]
However, as previously discussed, respondent's disallowance of a deduction is presumed to be correct and thus the burden of proving entitlement to such deduction rests on the taxpayer. Welch v. Helvering, supra; Rule 142(a), supra. We have been given to probative evidence that any additional amounts were spent for medicine and drugs. A claim of reasonableness alone does not provide us with a sufficient basis to find that the disallowed expenses were in fact incurred. Accordingly, we find for respondent on this issue. Decision will be entered under Rule 155. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended, and in effect during the year in issue.↩
2. On the bank's records petitioner was designated as the pastor, Ms. Curry as the secretary and Norman Kellman as the treasurer of the Universal Life Church of Snow.↩
3. Checks written on the account during 1976 for rent attributable to petitioner's residence totaled $ 1,925. ↩
4. Checks written on the account during 1976 payable to "AlaskaUSA Federal Credit Union" attributable to the purchase of the automobile totaled $ 1,350.↩
5. The donee of the $ 1,850 claimed cash contribution was unspecified on schedule A of petitioner's 1976 return.↩
6. The Universal Life Church, Inc. of Modesto was held to be a tax exempt organization under section 501(c)(3) in Universal Life Church, Inc. v. United States, 372 F. Supp. 770 (E.D. Cal. 1974). However, the holding in that case only applied to the parent church. See Reimers v. Commissioner, T.C. Memo. 1981-456↩.
7. In fact, of the total $ 5,544.38 in checks written on the organization's account in 1976 all but $ 42.00 was paid directly to petitioner or was used to pay his rent, utilities, and automobile expenses. ↩
8. The term "charitable contribution" itself is synonomous with the word "gift." Dejong v. Commissioner, 36 T.C. 896 (1961), affd. 309 F.2d 373 (9th Cir. 1962). This Court has held that the presence of a substantial direct personal benefit inuring to the taxpayer is fatal to the characterization of the payments as charitable contributions. Seed v. Commissioner, 57 T.C. 265, 276↩ (1971). 9. The petitioner alternatively attempted to substantiate his contribution by producing an undated form letter from the Universal Life Church, Inc., of Modesto, California, stating that Mr. Kellman had contributed $ 1,850 to that organization in 1976. The document was admitted into evidence solely for the purpose of showing that petitioner received such a document. Considering the record as a whole we attach no weight to petitioner's testimony on this point and decline petitioner's invitation to find that he contributed $ 1,850 to Universal Life Church, Inc., of Modesto, California.↩
10. See Rev. Proc. 72-39, 1972-2 C.B. 818↩.
11. Section 213 provides in relevant part as follows: (a) Allowance of Deduction.--There shall be allowed as a deduction the following amounts, not compensated for by insurance or otherwise-- (1) the amount by which the amount of the expenses paid during the taxable year * * * for medical care of the taxpayer * * * exceeds 3 percent of the adjusted gross income. (b) Limitation with Respect to Medicine and Drugs.--Amounts paid during the taxable year for medicine and drugs which (but for this subsection) would be taken into account in computing the deduction under subsection (a) shall be taken into account only to the extent that the aggregate of such amounts exceeds 1 percent of the adjusted gross income.↩
12. Because $ 41.86 does not exceed 1 percent of the taxpayer's adjusted gross income, respondent's disallowance of the additional $ 34.13 claimed effectively eliminates the entire deduction for medicine and drugs. 13. Respondent initially allowed $ 748 in other medical expenses and on brief conceded $ 224 in transportation expenses for a total of $ 972.↩