ROBERT A. BEAUVAIS and BARBARA BEAUVAIS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Beauvais v. Commissioner
Docket No. 17442-83.
United States Tax Court
T.C. Memo 1985-204; 1985 Tax Ct. Memo LEXIS 426; 49 T.C.M. (CCH) 1346; T.C.M. (RIA) 85204; April 29, 1985. Peter R. Stromer, for the petitioners. Dean H. Wakayama, for the respondent. SCOTT MEMORANDUM FINDINGS *427 OF FACT AND OPINION SCOTT, Judge: Respondent determined deficiencies in petitioners' income taxes for the calendar years 1979, 1980 and 1981 in the amounts of $1,183, $8,906 and $11,112, respectively, and additions to tax under section 6653(a)[1] in the respective amounts of $59, $445 and $556 for these years. By amendment to answer, filed pursuant to leave, respondent requested that the Court award damages against petitioners under section 6673. The issues for decision are (1) whether petitioners are entitled to deductions for claimed contributions to the Universal Life Church in the amounts of $3,655, $21,222 and $25,380 for the years 1979, 1980 and 1981, respectively; (2) whether petitioners are liable for additions to tax under section 6653(a) for each of the years 1979, 1980 and 1981; [2] and (3) whether the Court should award damages to the Government under section 6673. *428 FINDINGS OF FACT Petitioners, husband and wife, who at the time of the filing of their petition in this case resided in Federal Way, Washington, filed joint Federal income tax returns for the calendar years 1979, 1980 and 1981. During the years 1979, 1980 and 1981, Robert A. Beauvais was employed on a full-time basis as a supervisor for Pacific Maritime Assn., and Barbara Beauvais was employed as a store account representative. In October 1979, petitioner Robert A. Beauvais joined the Universal Life Church and a short time thereafter received from the Universal Life Church, Inc., of Modesto, California, credentials of ministry and a charter for a congregation of the Universal Life Church. The charter petitioner received was No. 32003. Petitioner Barbara Beauvais also received a certificate as a minister of the Universal Life Church and so did Mr. and Mrs. Beauvais' daughter. Petitioners and their daughter were the directors of the congregation of the Universal Life Church No. 32003. On November 23, 1979, petitioners opened an account in the name of the Universal Life Church No. 32003, at the Peoples National Bank of Seattle, Washington (Peoples National Bank). Mr. and *429 Mrs. Beauvais were the signatories on the account and the address given to the bank as the address of the Universal Life Church No. 32003 was petitioners' residence. The account was opened with a check for $500 drawn by Mr. Beauvais on the personal checking account that Mr. and Mrs. Beauvais maintained at Peoples National Bank. After opening the account at Peoples National Bank in the name of the Universal Life Church No. 32003, Mr. Beauvais drew checks in 1979 to the Universal Life Church No. 32003 on petitioners' personal checking account in the total amount of $3,655 (including the $500 check), which checks were deposited in the bank account in the name of the Universal Life Church No. 32003. During the calendar year 1979, either Mr. or Mrs. Beauvais drew checks totaling $2,945 on the account of the Universal Life Church No. 32003 which were deposited into their personal checking account at Peoples National Bank. During the calendar year 1980, checks were drawn by Mr. Beauvais on petitioners' personal checking account at Peoples National Bank to the Universal Life Church No. 32003 in the total amount of $21,222 and deposited in the account of the Universal Life Church No. *430 32003 at Peoples National Bank. During the year 1980, checks were drawn by either Mr. or Mrs. Beauvais on the account of the Universal Life Church No. 32003 at Peoples National Bank totaling $18,230 and deposited into petitioners' personal checking account at that same bank. During the calendar year 1981, checks totaling $25,380 were drawn by Mr. Beauvais on petitioners' personal checking account at Peoples National Bank, made either to the order of Universal Life Church or Universal Life Church No. 32003, and all of these checks were deposited in the account of the Universal Life Church No. 32003 at Peoples National Bank on which petitioners were the sole signatories. During 1981, checks totaling $17,250 were drawn by either Mr. or Mrs. Beauvais on the account of the Universal Life Church No. 32003 at Peoples National Bank and deposited into petitioners' personal checking account at that bank. In addition, checks totaling $4,754.71 were drawn on the account of the Universal Life Church No. 32003 at Peoples National Bank to Pacific Northwest Bell, Peoples Mortgage Co., Federal Way Water and Sewer, Puget Sound Power, two payees unidentified in the record, and to the Universal Life *431 Church, Inc. The three checks drawn to the Universal Life Church, Inc., totaled $36. The checks drawn to Pacific Northwest Bell, Federal Way Water and Sewer and Puget Sound Power were in payment for utilities used in the home occupied by petitioners and their family. The checks drawn to Peoples Mortgage Co. were in payment for mortgage payments due on the home owned by petitioners which was used as their family residence. Checks were drawn on petitioners' personal checking account in payment of many personal expenditures including such items as store bills, mortgage payments, utility bills, food, clothing, credit card bills, jewelry and doctors' bills. Petitioner Robert A. Beauvais, on October 19, 1979, drew a check for $20 to the Universal Life Church, Inc., and this check was deposited in an account in the name of that organization in Modesto, California. Respondent's agents issued administrative summons to obtain petitioners' bank records from Peoples National Bank. Petitioners stayed the summons with respect to the year 1981 and the United States Government instituted a summons enforcement proceeding in the United States District Court to obtain compliance with the summons *432 for the year 1981. Compliance was obtained and the bank records for the year 1981 turned over to respondent's agents. Petitioners on their Federal income tax return for the year 1979 deducted as a charitable contribution under the designation "Universal Life Church No. 32003" the amount of $3,655. For the year 1980, an amount of $21,222 was deducted as a charitable contribution, with a similar designation "Universal Life Church No. 32003." On their Federal income tax for the calendar year 1981, under charitable contributions, petitioners took a deduction of $25,380 with the explanation "Universal Life Church." Respondent in his notice of deficiency disallowed the deductions claimed by petitioners as contributions to the Universal Life Church with the following explanation: The $3,655.00 for 1979, $21,222.00 for 1980, and $25,380.00 for 1981 shown on your returns as a deduction for contributions are not allowable because it has not been established that these contributions were paid during the taxable years or that they met the requirements of Section 170 of the Internal Revenue Code. Accordingly, your taxable income is increased $3,655.00 for 1979, *433 $21,222.00 for 1980, and $25,380.00 for 1981. In explanation of the addition to tax of $59 for 1979, $445 for 1980 and $556 for 1981, respondent in his notice of deficiency stated as follows: Part of the underpayment of tax for the tax years is due to negligence or intentional disregard of rules and regulations. Consequently, the 5 percent addition to the tax is added for these years as provided by Section 6653(a) of the Internal Revenue Code. OPINION Section 170(a) provides, insofar as here pertinent, that there shall be allowed as a deduction any charitable contribution as defined in subsection (c), payment of which is made within the taxable year. Section 170(c) defines the term "charitable contribution" to mean a contribution or gift to or for the use of a corporation, trust, or community chest, fund or foundation created or organized in the United States or any possession thereof which is organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, no part of the net earnings of which inures to the benefit *434 of any private shareholder or individual. The first criteria for determining if a payment is a charitable contribution which is deductible under section 170(a) is that the payment be a contribution or gift to an entity as designated in the statute. Here, it is incumbent upon petitioners to show that they made a gift either to the Universal Life Church, Inc. of Modesto, California, which both parties recognize was an organization which met the criteria of section 170(c) for the years here in issue, or to some other organization that would qualify under the definition in section 170(c). When petitioners drew checks to put in the bank account of Universal Life Church No. 32003, they did not part with control over the funds deposited into that account since the sole signatories on that account were petitioners. As we pointed out in Davis v. Commissioner,81 T.C. 806, 817 (1983), on appeal (9th Cir., June 25, 1984): The term "charitable contribution" as it is used generally in section *435 170 is largely synonymous with the term "gift." Seed v. Commissioner,57 T.C. 265, 275 (1971); DeJong v. Commissioner,36 T.C. 896, 899 (1961), affd. 309 F.2d 373, 376-379 (9th Cir. 1962). A gift is generally defined as a voluntary transfer of property to another without consideration. Seed v. Commissioner,supra at 275; DeJong v. Commissioner,Supra at 899. * * * Here, the fact that petitioners retained control over the funds deposited in the bank account of Universal Life Church No. 32003 makes it clear that the amounts deposited in that account were not transferred to another. A transfer of property has not taken place until that property is placed outside of the control of the transferor. As long as a transferor of property maintains his control over that property to such an extent that he can dispose of it in any manner that he sees fit, no gift has been made of the property regardless of the intentions of the person who is claiming to have made the gift. In order for a gift to be made, *436 the claimed gifted property must be placed outside the control of the donor. Petitioners argue that their conscience and moral principles would not have permitted them to use funds they placed in the bank account of Universal Life Church No. 32003 for purposes other than one they considered a church purpose. However, the record is clear that no restraints on petitioners' use of the funds placed in the bank account of Universal Life Church No. 32003 existed and that petitioners alone were able to dispose of the funds in that account as in their judgment they deemed appropriate. Under these circumstances, no gift was made by petitioners and therefore no charitable contribution was made by them of the funds placed in the bank account of Universal Life Church No. 32003. This conclusion alone is sufficient for us to conclude that petitioners are not entitled to deduct as charitable contributions the amounts they placed from their personal checking account into the bank account of Universal Life Church No. 32003. However, there are numerous other facts in this record which clearly show that petitioners are not entitled to the claimed charitable contribution deductions. Petitioners *437 equate the placing of funds in the bank account of Universal Life Church No. 32003 with a contribution to the Universal Life Church, Inc., of Modesto, California. However, except for a $20 check not here involved, all of the checks written by petitioners which were produced at the trial of this case are drawn to and deposited in the bank account of the Universal Life Church No. 32003. It is not clear whether petitioners are contending that the exemption of the Universal Life Church, Inc., of Modesto carries over to the congregation represented by Charter No. 32003. However, as was pointed out in Hall v. Commissioner,729 F.2d 632, 634 (9th Cir. 1984), affg. a Memorandum Opinion of this Court, courts have repeatedly held that exemption for parent churches do not automatically carry over to local congregations. See also, McGahen v. Commissioner,76 T.C. 468, 481 (1981), affd. without published opinion 720 F.2d 664 (3d Cir. 1983); Basic Bible Church v. Commissioner,74 T.C. 846, 855 (1980). It is therefore incumbent upon petitioners *438 to show that their congregation of the Universal Life Church represented by Charter No. 32003 meets the requirements set forth in section 170(c) for an organization to which contributions are deductible. Petitioners have made very little showing with respect to the activities of the congregation of the Universal Life Church represented by Charter No. 32003. However, the record is clear that this congregation fails to meet the requirement of section 170(c) that no part of the net earnings of that congregation inures to the benefit of any private shareholder or individual. Because of failure to meet this requirement, the congregation represented by Charter No. 32003 is not an organization to which a charitable contribution or gift is deductible. The record shows that most of the funds placed by petitioners in the bank account of Universal Life Church No. 32003 were withdrawn by petitioners from that account and placed into petitioners' personal checking account on which checks were written for many of petitioners' various personal and household expenses. Petitioners argue that they kept *439 track of how must was taken from the account of Universal Life Church No. 32003 and put in their personal checking account and that that amount was used for what they considered church expenses. Petitioners stated that funds were used to pay the mortgage, mortgage interest, utility bills and other bills connected with their personal residence where they lived with their children. Petitioners claim that this is equivalent to a parsonage allowance. However, petitioners have made no showing that the amounts withdrawn from the bank account of Universal Life Church No. 32003 represented the rental value of a home furnished to a minister of the gospel as part of his compensation, or a rental allowance paid as part of a minister's compensation used by him to rent or provide a home. Section 107. The various amounts withdrawn in each year from the Universal Life Church No. 32003 account and placed in petitioners' personal checking account clearly appear to be in excess of any reasonable rental value of a parsonage. There is no showing in this record of what amount might be such a reasonable parsonage allowance. *440 Excessive parsonage allowances are earnings of an organization inuring to an individual's benefit. Unitary Mission Church v. Commissioner,74 T.C. 507, 514 (1980), affd. without published opinion 647 F.2d 163 (2d Cir. 1981); Hall v. Commissioner,supra at 634. Furthermore, on this record petitioners have not shown that the funds withdrawn by them from the account of Universal Life Church No. 32003 and placed in their personal checking account were not spent for many incidental living expenses of petitioners such as department store bills, food, and like items. It should be pointed out that the statute refers to no part of the net earnings of which inures to the benefit of a private individual and therefore even if the benefit inuring to an individual is small, it is still impermissible and causes the organization not to be one to which charitable contributions may be deducted, as defined in section 170(c). McGahen v. Commissioner,supra.
In this case the record is replete with evidence that the high percentage of *441 the funds placed in the bank account of Universal Life Church No. 32003 were used for the personal benefit of petitioners. On this basis, also, we conclude that petitioners are not entitled to the claimed charitable deductions to the Universal Life Church No. 32003. Petitioners have likewise failed to show many other factors which they would be required to show to establish that the congregation of the Universal Life Church represented by Charter No. 32003 was an organization as defined in section 170(c) to which contributions are deductible. However, because of the clear record with respect to the funds purportedly donated to the Universal Life Church No. 32003 inuring to petitioners' personal benefit, we need not discuss the further aspects of petitioners' failure of proof. Petitioners' primary argument is that this Court lacks jurisdiction to determine the issue of the deductibility of the contributions in this case since to do so requires a determination with respect to the applicability of the 1st Amendment to the Constitution and, in petitioners' view, this Court lacks jurisdiction to make such a determination. It has been repeatedly held that *442 this Court has jurisdiction to make such determinations of the applicability of the Constitution to claimed deductions or exclusions from income as are necessary to exercise its jurisdiction to redetermine deficiencies determined by respondent. See Rowlee v. Commissioner,80 T.C. 1111, 1114 (1983). Petitioners here, as did the taxpayer in the Rowlee case, rely on the holding of the Supreme Court in Northern Pipeline Construction Co.v. Marathon Pipe Line Co.,458 U.S. 50 (1982), for their contention that this Court lacks the power to rule on issues involving the First Amendment to the Constitution. However, as pointed out in Rowlee,supra, petitioners' reliance on Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,supra, in misplaced because of the distinctions in the bankruptcy act there under consideration and an act creating a legislative court under Article 1 of the Constitution. Furthermore, in determining whether petitioners are entitled to the claimed charitable contributions, we have not been required to pass upon whether any rights of petitioners *443 under the First Amendment to the Constitution are violated. Nothing affecting petitioners' personal beliefs or religious leanings are involved in this case. What is involved is petitioners' claim of a deduction for funds which, by their own description, made circular rounds between the bank account of Universal Life Church No. 32003 and their personal checking account from which their ordinary living expenses were paid. Requiring a taxpayer to show that an organization to which he claims to have made charitable contributions meets the requirement of section 170(c) is not in any way related to the protection afforded by the First Amendment to a person's freedom of religion. However, if in attempting to show that an organization meets the requirements of section 170(c) it is necessary to demonstrate the religious activities of that organization, such an incidental burden on religion is clearly permissible. See Hall v. Commissioner,supra at 635. As pointed out in Unitary Mission Church v. Commissioner,74 T.C. at 514-- it is well settled that *444 the First Amendment right to free exercise of religion is not absolute and may be subject to incidental and indirect burdens. Johnson v. Robison,415 U.S. 361 (1974); Gillette v. UnitedStates,401 U.S. 437 (1971); General Conf. of the Free Church v. Commissioner,71 T.C. 920, 930 (1970). The granting of an exemption to qualifying groups is a matter of legislative grace and not a constitutional right. As long as an exemption is denied without an inquiry into the merits of religious beliefs, the denial is constitutionally permissible. Parker v. Commissioner,365 F.2d 792 (8th Cir. 1966), cert. denied 385 U.S. 1026 (1967). [Fn. ref. omitted.] On the basis of this record we conclude that petitioners have failed to establish that they are entitled to charitable contribution deductions for the amounts for which they wrote checks from their personal checking account to the Universal Life Church No. 32003 account. We therefore sustain in full respondent's disallowance of petitioners' claimed charitable *445 contribution deductions. Petitioners have offered no evidence to overcome the presumption of correctness of respondent's determination that they are liable for the additions to tax under section 6653(a). Petitioners in their brief do not contend that they have produced any evidence to show that respondent's determination of the additions to tax for negligence is in error but rather argue that the proper rule should be that absent any evidence on the point, the section 6653(a) additions to tax should be rejected. Petitioners argue that the law of negligence is governed by State law and that to show negligence under the applicable State law is respondent's burden. This Court has held in numerous cases that when respondent determines in his notice of deficiency an addition to tax for negligence or intentional disregard of rules and regulations under section 6653(a), the burden is on the taxpayer to show error in that determination. Davis v. Commissioner,supra at 820; Enoch v. Commissioner,57 T.C. 781, 802 (1972), and cases there cited. We sustain *446 respondent's determination of the addition to tax under section 6653(a) for each of the years here in issue. The final question is whether damages under section 6673 should be awarded to the Government on the basis that this proceeding was instituted or maintained by petitioners primarily for delay, or that petitioners' position in the proceeding is frivolous or groundless. Section 6673 provides that whenever it appears to this Court that a proceeding before it has been instituted or maintained by the taxpayer primarily for delay or that the taxpayer's position in the proceeding is frivolous or groundless, damages in an amount not in excess of $5,000 may be awarded to the United States by the Court in its decision. Based on the record here as a whole, we conclude that petitioners' position in this case is frivolous and groundless. Petitioners are intelligent individuals. By their own admission the Universal Life Church No. 32003 bank account was a circular account with their personal bank account. We do not believe petitioners though they were entitled to a deduction for a charitable *447 contribution for funds which, after circling through an account entitled "Universal Life Church No. 32003," came back to their personal checking account to pay their personal expenses. Petitioners claim that their position is not frivolus and groundless since they are attempting to get a jurisdictional question of the power of this Court to decide constitutional issues before a higher court. However, petitioners were aware that the facts here clearly demonstrate that their claimed charitable contribution deductions are improper without consideration of any constitutional issues. They attempted to block respondent's efforts to obtain their bank records. The record also indicates that numerous cases of this Court and other courts denying claimed charitable contribution deductions to taxpayers under circumstances indistinguishable from the facts here present were called to petitioners' attention. The record reasonably demonstrates that petitioners were aware of the groundlessness and frivolousness of their claim based on the facts which they knew. We therefore conclude that there is no merit to their claim that this case was not frivolous and groundless because of their desire to *448 have a constitutional issue litigated. It is also clear that well before the time the case came on for trial petitioners were aware that there was a total lack of merit in their position. We therefore conclude that petitioners maintained this action primarily for delay. On the basis of this record, we award to the Government damages in the total amount of $5,000. Decision will be entered for the respondent.
Footnotes
1. Unless otherwise stated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the years here in issue.↩
2. In the notice of deficiency, respondent determined that for the years 1979 and 1980 petitioners failed to report interest received in the amounts of $43 and $28, respectively. At the trial, petitioners conceded that they had failed to report interest in the amounts as determined by respondent.↩