CHURCH OF NATURE IN MAN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Church of Nature in Man v. Commissioner
Docket No. 9280-82X.
United States Tax Court
T.C. Memo 1985-212; 1985 Tax Ct. Memo LEXIS 420; 49 T.C.M. (CCH) 1393; T.C.M. (RIA) 85212; May 2, 1985. Richard B. Stowell (an officer), for the petitioner. Lewis R. Mandel, for the respondent. GUSSIS
MEMORANDUM OPINION GUSSIS, Special Trial Judge: This is an action for declaratory judgment [1] under section 7428 of the Code. [2] It has been decided pursuant to assignment under the provisions of section 7456(d)(1) and Rule 218(a) [3]. Pursuant to Court Order this case was submitted on the basis of the administrative record filed July 28, 1982. The issue is whether petitioner qualifies for exemption from Federal income tax under section 501(c)(3). *422 The Church of Nature in Man (hereinafter the Church) was incorporated on December 12, 1980, pursuant to Article 9 of the New York Religious Corporations Law. The certificate named eight trustees (including three married couples) to manage the Church. The purposes for which the Church was organized were stated to be: "The founding and continuing of a free church to be established within the County of Rensselaer, State of New York." The By-laws of the Church gave the Board of Trustees authority to hire a pastor who would conform to Church doctrine and be in charge of the Church's operations and devotional services. The By-laws also provided for annual business meetings where a budget would be adopted and the financial situation of the Church reported. Upon dissolution of the Church, all real and personal property would be "disposed of in a manner consistent with the wishes of the membership and in accordance with the laws of the State of New York . . ." In its application for exemption dated January 30, 1981 the Church stated that its sole activity was a "weekly (in good weather sometimes daily) worship of God in our own way." All church funds were to be derived from voluntary *423 donations by its members. In a statement attached to its application, The Church stated its formal code of doctrine and creeds as follows: 1) God did not create Nature, God is Nature. 2) Only change is inevitable. 3) Everything is mutually dependent upon everything else. 4) The universe has no fixed substratum of fixed substances and its only reality lies in its own phenomena. 5) Everything is alive, not only animals but also water, earth and stones. Our present society believes everything is dead, even its own people, and if in spite of that something persists in trying to live society will rub it out. 6) Man is an animal, no more, no less. In addition, the Church stated that the benefits it would provide with respect to its exempt function would be "a place [to] worship God." The Church's financial data revealed gross contributions totaling $542.82 and total expenses of $380, leaving the Church with $162.82. The Bylaws of the Church did not contain a provision prohibiting its net earnings from inuring to the benefit of any member. However, an amendment to its By-laws, dated January 29, 1981, was filed with the State of New York. This amendment reflecting the *424 statutory language in section 501(c)(3) included a provision which prohibited any part of the Church's net earnings from inuring to the benefit of any of its members. On March 11, 1981, the Internal Revenue Service, prior to taking any final action on the Church's application for exemption advised the Church to amend its certificate of incorporation to provide that upon dissolution its assets be distributed to other section 501(c)(3) organizations. The Church failed to comply. The Internal Revenue Service also sought proposed budgets of the Church for 1981 and 1982, a copy of its rental or lease agreement with respect to its facilities and more information about the church's past, present and future activities. In its reply, the Church stated that it had no prepared budgets, that it had no rental or lease agreements, summer services being held on members' land and, in the winter, in members' homes, that it had no priests, ministers, or other employees, and that no religious instruction was provided for members' children. On July 24, 1981, the Internal Revenue Service issued an initial determination that the Church did not qualify for exempt status under section 501(c)(3). On *425 August 13, 1981, the Church's application for exemption was referred to the National Office of the Internal Revenue Service. In its final adverse determination dated April 12, 1982 the Internal Revenue Service determined that the Church of Nature in Man was not a church for purposes of section 501(c)(3) and that it also failed to meet both the organizational and operational tests set forth in sections 1.501(c)(3)-1(b) and (c), Income Tax Regs.
Petitioner has the burden of proof to overcome the grounds enumerated in respondent's determination. Hancock Academy of Savannah, Inc. v. Commissioner,69 T.C. 488, 492 (1977); Rule 217(c)(2)(i). This Court's determination is based on the facts contained in the administrative record and any inferences that may fairly be drawn therefrom. Dumaine Farms v. Commissioner,73 T.C. 650, 664-665 (1980). We find that petitioner has failed to meet its burden. An organization may qualify for exemption from income taxation under section 501(c)(3) only if it is organized and operated exclusively for one or more of the exempt purposes specified in section 501(c)(3). Section 1.501(c)(3)-1(a)(1), Income Tax Regs. *426 To meet this two-part test, petitioner's "articles of organization" must limit it to one or more exempt purposes, and petitioner must not engage, except to an insubstantial degree, in activities which do not further an exempt purpose, i.e., an "organizational" test and an "operational" test. Section 1.501(c)(3)-1(b) and 1(c), Income Tax Regs. The presence of a single nonexempt purpose, if substantial in nature, will destroy the exemption regardless of the number of truly exempt purposes. Better Business Bureau v. United States,326 U.S. 279 (1945); Copyright Clearance Center v. Commissioner,79 T.C. 793 (1982). In addition, an organization is not organized exclusively for one or more exempt purposes unless its assets are dedicated to an exempt purpose. An organization's assets are considered dedicated to an exempt purpose if upon dissolution such assets would, by reason of a provision in the organization's articles or by operation of law, be distributed for one or more exempt purposes. An organization does not meet the "organizational" test if its articles or the law of the State in which it was created provide that its assets would, upon dissolution, *427 be distributed to its members or shareholders. See Section 1.501(c)(3)-1(b)(4), Income Tax Regs.
Here, the Church failed to amend its articles of incorporation or its By-laws to include a proper dissolution provision even after this defect was called to its attention on the administrative level. Petitioner's articles simply provide that the disposition of assets will be made in a "manner consistent with the wishes of the membership and in accordance with the laws of the State of New York." The broad provisions of section 18 of the New York Religious Corporations Law (Vol. 50 McKinney's Consolidated Laws of New York (1952)), which provide for the dissolution of religious corporations under judicial supervision, do not require that a religious corporation's assets be distributed upon dissolution for exempt purposes or for such other purposes as limited by section 1.501(c)(3)-1(b)(4) of the regulations. Nor do the applicable non-judicial dissolution provisions governing not-for-profit corporations under New York law, which simply permit the adoption of a plan for the dissolution of the corporation and the distribution of its assets, meet the test of the regulations. See N.Y. Not-For-Profit Corporation Law, section 1001(a) *428 (McKinney 1970). Thus, neither under New York law nor under the Church's articles is a provision made for the requisite disposition of its assets upon dissolution. This defect is fatal to petitioner's application for tax exempt status. We conclude therefore that petitioner fails the "organizational" test of section 501(c)(3). See General Conference of the Free Church of America v. Commissioner,71 T.C. 920 (1979). Moreover, we believe that the Church of Nature in Man fails to meet the "operational" test under section 501(c)(3). Petitioner's meager description of its proposed activities is simply inadequate to support an objective determination as to whether it will in fact operate exclusively for exempt purposes. See La Verdad v. Commissioner,82 T.C. 215 (1984). Its activities are described as weekly (in good weather sometimes daily) worship meetings in the homes of members or (in summer) on the land of members. Petitioner has no church building, no minister, no school and no budget. Bague generalizations and expectations do not permit a conclusion that the organization will meet the necessary requirements for exemption. In short, the administrative *429 record does not demonstrate, even remotely, that petitioner operates exclusively for exempt purposes. Therefore, respondent's denial of petitioner's request for tax-exempt status was reasonable. Accordingly, we must affirm the determination of respondent that petitioner is not exempt from taxation under the provisions of section 501(a) as an organization described in section 501(c)(3). See Pius XII Academy, Inc. v. Commissioner,T.C. Memo. 1982-97, affirmed without published opinion, 711 F.2d 1058 (6th Cir. 1983). Decision will be entered for the respondent.
Footnotes
1. The statutory prerequisites for declaratory judgment have been satisfied: petitioner is the organization whose qualification is at issue, sec. 7428(b)(1); petitioner exhausted all its administrative remedies, sec. 7428(b)(2); and, petitioner filed a timely petition with this Court, sec. 7428(b)(3). ↩
2. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. ↩
3. All rule references are to the Tax Court Rules of Practice and Procedure.↩