LEVY FAMILY TRIBE FOUNDATION, INC., PETITIONER *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4555–77X.     Filed January 26, 1978.

Charles W. Levy (an officer), for the petitioner.
*James J. McGovern,* for the respondent.

## OPINION

DAWSON, *Judge:* Respondent determined that petitioner does not qualify for exemption from Federal income tax under section 501(a)[1] as an organization described in section 501(c)(3). Petitioner challenges respondent's determination and has invoked the jurisdiction of this Court for a declaratory judgment pursuant to section 7428.[2] At issue is whether petitioner satisfies the organizational and operational requirements for exemption pursuant to the regulations under section 501(c)(3).

This case is submitted for our decision under Rule 122, Tax Court Rules of Practice and Procedure. The joint stipulation as to the administrative record and the administrative record were filed by the parties pursuant to Rule 217 of this Court and are assumed to be true for purposes of this proceeding. The pertinent facts are set forth below.

The Levy Family Tribe Foundation, Inc. (petitioner), was incorporated on December 18, 1974, as a non-stock corporation

---

[1] All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.

[2] Sec. 7428, which provides for this judicial relief, sets forth the prerequisites for declaratory judgment. We are satisfied that they have been met: Petitioner exhausted its administrative remedies, sec. 7428(b)(2); the petition was filed by the organization the qualification of which is at issue, sec. 7428(b)(1); and petitioner mailed its petition before the 91st day after respondent mailed his determination in this matter, sec. 7428(b)(3). See also Rule 210(c), Tax Court Rules of Practice and Procedure.

under Virginia law. The articles of incorporation, article Third in part, state the corporate purposes:

(a) To receive and administer funds for the education of young adults and children in the arts, with particular emphasis upon the education of retarded and handicapped children in this field.

(b) To receive and administer funds for the purpose of expanding the culture, religion, beliefs, and customs of the members of the twelve tribes of Israel.

Article Third(b) was amended on February 5, 1975, whereby the Tribe of Levi was substituted for the 12 tribes of Israel.

The officers and directors of petitioner are Charles W. Levy and his parents, Barney and Mae Levy. These named individuals have been trading postage stamps with "the children of Israel"[3] since 1967. They established petitioner corporation so that they could travel to Israel and purchase several tracts of land there. They intended to continue this activity on a permanent basis through use of the petitioner corporation. The Levy family set up petitioner in the belief that permanent facilities in Israel might be established near Haifa "to provide ancestral roots important to human growth." They wanted to institute discussions and seminars in music and discussions pertaining to the concepts set out in article Third above, to place animals in a sanctuary environment, and to mitigate the effects of modern day pollution.

In furtherance of these goals, the Levy family conducts stamp trading activity by mail with "the children of Israel" at the Levy family store, L and G Trading Post, Alexandria, Va. Each used Israeli stamp received is traded for one or more stamps owned by the Levys, who believe that each stamp represents a living soul and a link to religious activity formerly carried on by their ancestors. Petitioner has neither sought nor received approval for any extended projects in Israel from anyone in the Israeli government.

Petitioner's assets consist of over 100,000 used postage stamps. Petitioner has received small but negligible contributions. Disbursements have been made for organizational costs and minor operating expenses.

---

[3]This terminology is contained in the administrative record and appears to be based on petitioner's biblical explanation of the phrase, rather than pertaining to any one particular group.

Petitioner represented in its initial exemption application that stamp trading is the primary activity of the organization:

The Levy Family Tribe has been actively engaged in trading used postage stamps for several years. The main purpose of the corporation will be to trade postage stamps for the children of Israel in Israel.

Petitioner explained this activity in a letter of May 14, 1975, describing stamp trading as a "business" in which it has been engaged since June 1967. The letter also reflects petitioner's attempt to solicit the support of stamp collectors in the United States and Israel. The May 14 letter also states:

(This is the disease of stamps * * * no matter how many stamps you already have you want more.) So, while I don't expect to receive anything other than stamp collections from collectors in the U.S.A. who wish to get a tax deduction although I will gladly accept any donations in cash * * * hopefully to pay for purchasing a choice site in Israel for a stamp trading club house, * * *

The following day, May 15, 1975, petitioner sent a second letter further amplifying the stamp-trading activity, as follows:

the Foundation literally trades stamps with other members of the twelve tribes of Israel as a contact with as many persons as possible * * * this activity * * * is used merely as a contact point with other persons. It is the link through which the foundation hopes to attract contribution [sic] to enable it to carry out its religious and charitable objectives, the teaching of music to the children of Israel and expanding the knowledge of the customs, religious beliefs and culture of the members of the Tribe of Levi.

In its second exemption application petitioner reasserts the general exempt significance of the stamp trading activity with "the children of Israel."

Respondent issued a final notice of determination dated April 5, 1977, affirming a prior adverse determination of December 1, 1976, based upon the following reason:

We concluded that you were neither organized nor operated exclusively for one or more exempt purposes, as specified in section 501(c)(3) of the Code.

Organizations that are organized and operated exclusively for religious, charitable, or educational purposes are exempt from Federal income tax under sections 501(a) and 501(c)(3), inter alia, if no part of the net earnings inures to the benefit of any shareholder or individual. An organization is not regarded as exempt if more than an insubstantial part of its activities authorized in its charter is not in furtherance of an exempt purpose specified in section 501(c)(3). Sec. 1.501(c)(3)–1(b)(1),

Income Tax Regs. Failure to meet *either* the operational or the organizational test negates exempt status. Sec. 1.501(c)(3)–1(a)(1), Income Tax Regs. The organization must serve public rather than private purposes, and it may not benefit private interests of the creator or his family.

Respondent denied recognition of exemption based on two grounds: (1) The stamp trading activity is of a personal nature and (2) the corporation serves as an adjunct of the family business. According to respondent, petitioner has, on both grounds, violated the requirement that an exempt organization be organized[4] and operated exclusively for public rather than private purposes.

To prevail in this case petitioner must prove that respondent's determination is incorrect. *Hancock Academy of Savannah, Inc. v. Commissioner*, 69 T.C. 488 (1977); Rule 217(c)(2)(ii), Tax Court Rules of Practice and Procedure. Petitioner has failed to meet this burden.

The evidence with respect to the operational test clearly weighs against petitioner for two reasons. First, the operational test requires that an organization operate exclusively for one or more exempt purposes under section 501(c)(3), rather than for the benefit of persons who created the organization. Sec. 1.501(c)(3)–1(a), Income Tax Regs. Barney, Mae, and Charles Levy are all related and are all officers and directors of the

---

[4]The organizational test specifically limits an organization's activities to one or more exempt purposes. It restricts all other activities not in furtherance of exempt purposes to only those minor functions deemed an "insubstantial part" of the organization's exempt purposes and activities. Sec. 1.501(c)(3)–1(b)(1)(i), Income Tax Regs.

The thrust of respondent's argument for the organizational test is that the purposes stated in article Third may or may not be exempt depending on the manner in which petitioner is operated. Respondent therefore concludes that petitioner fails the organizational test because the narrow corporate purposes have not been sufficiently described to be considered exempt.

While this reasoning is not altogether specious, the generalization confuses the organizational and operational tests and also glosses over an important point. The breadth or restriction of the exempt purpose in the articles of incorporation is inconsequential as long as it falls within the guidelines of those purposes stated in sec. 501(c)(3). Sec. 1.501(c)(3)–1(b)(ii), Income Tax Regs. It does not necessarily follow that, when the exempt purpose is narrowly defined, it must be described in detail, as respondent would have us believe. Rather, this procedure need by followed only when the narrow activity described, for example, a "school for adult education," can be generically either exempt or nonexempt.

On its face, article Third(a) would seem to pertain to the educational purpose stated in the statute. Article Third(b) likewise pertains to the religious purposes delineated in sec. 501(c)(3), although it might be questioned whether "expanding the culture, religion, beliefs, and customs of the members of the Tribe of Levi" falls between the cracks of exemption and nonexemption and, therefore, requires further explanation. Since we decide this case on the operational test contained in the regulations, we make no determination herein regarding the parties' contentions under the organizational test.

petitioner corporation. Petitioner maintains that the Levy family and the corporation are indivisible. We accept that characterization; the necessary delineation between the two is missing and it is not clear whether the members are acting in an individual capacity or on behalf of petitioner. Absent evidence to the contrary, the individuals operating petitioner corporation stand to personally benefit from their stamp trading business. Religious purpose in itself is insufficient to overcome the requirement that no part of the corporation's net earnings may inure to private individuals under section 501(c)(3).

Second, in order to satisfy the operational test, an organization must be operated exclusively for one or more of the exempt purposes specified in section 501(c)(3). Sec. 1.501(c)(3)–1(a)(1), Income Tax Regs. Petitioner has alleged that stamp trading is an activity conducted by petitioner as a means of attracting charitable contributions to further its exempt purposes. However, nowhere in the administrative record is there any description or explanation of how this activity furthers an exempt purpose. The record is replete with unsupported generalizations. These explanations are too general and lack the facts necessary to establish public, rather than personal, purposes of the organization.

Nor is petitioner's position advanced by expounding upon proposed activities for cultural centers, animal sanctuaries, pollution mitigation, and drug control centers and activities. The record is devoid of any explanation as to how these future activities will further an exempt purpose so as to meet the operational test. There is no indication of a realistic expectation or capability of performing such activities. Consequently, petitioner fails to meet the operational test of section 501(c)(3).

Accordingly, we hold that petitioner failed to qualify for recognition of exemption under section 501(a) as an organization described in section 501(c)(3).

*An appropriate decision will be entered.*