CHIEF STEWARD OF THE ECUMENICAL TEMPLES AND THE WORLDWIDE PEACE MOVEMENT AND HIS SUCCESSORS, A CORPORATION SOLE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Chief Steward of Ecumenical Temples etc. v. Commissioner
Docket No. 21382-82X.
United States Tax Court
T.C. Memo 1985-50; 1985 Tax Ct. Memo LEXIS 587; 49 T.C.M. (CCH) 640; T.C.M. (RIA) 85050; January 30, 1985
David Jesse Gilbert (an officer), for the petitioner. Philip J. Starr and Henry G. Salamy, for the respondent. CALDWELL
*640 MEMORANDUM FINDINGS OF FACT AND OPINION CALDWELL, Special Trial Judge: Petitioner has, pursuant to section 7428, [1] invoked the jurisdiction of this Court to determine whether it is exempt from Federal income tax under *641 section 501(c)(3). The *589 statutory requirements for this Court's declaratory judgment jurisdiction have been satisfied. Petitioner filed an application with the Internal Revenue Service for recognition of exemption from Federal income tax under section 501(c)(3) and claimed therein to be a church within the meaning of section 170(b)(1)(A)(i). On May 13, 1982, the Service issued a final adverse ruling. The reasons given for the adverse ruling were as follows: (1) You are not organized exclusively for exempt purposes as required by section 501(c)(3). (2) You have failed to establish that you will be operated exclusively for exempt purposes within the meaning of section 501(c)(3). You have failed to establish that you will serve public rather than private interests. You have failed to establish that no part of your net earnings inures to the benefit of any private individual. Furthermore, even if you were an organization described in section 501(c)(3), you would be a private foundation *590 because you are not a church within the meaning of section 170(b)(1)(A)(i), the only basis upon which your claim non-private foundation status. This case was submitted pursuant to Rules 122 and 217 on a stipulated administrative record, as supplemented by petitioner's Exhibit T and pages 1, 9 through 12, and 20 of petitioner's Exhibit U, pursuant to this Court's order dated October 12, 1983. The administrative record, as thus supplemented, is incorporated herein by reference, and the evidentiary facts contained therein are assumed to be true for purposes of this case. FINDINGS OF FACT Petitioner was formed as a corporation sole pursuant to Chapter 84 of the Nevada Revised Statutes on July 30, 1979. It *3 has a mailing address of P.O. Box 1181, Las Vegas, Nevada. Its headquarters are in Goodsprings, Nevada. Article II of petitioner's Articles of Incorporation provides as follows: Corporate Objective Section 1. This corporation is organized exclusively for charitable, religious, educational and scientific purposes and is subject to the adherence to and the compliance with all Federal, State and local regulations and laws that are applicable to this type organization. *591 It is incumbent upon the Chief Steward to be cognizant of all applicable laws and regulations and provide for their implementation as a function of administration. Section 2. Membership is open to all human beings worldwide contingent upon their agreement and commitment to abide by the established governing principles of conduct of the body politic or corporation. Section 3. It shall be the expressed purpose of this body to promote the recognition and practice of individual responsibility and ethics with human dignity by all people throughout the world, thus improving communications and understanding for the common good. Respondent in his proposed adverse ruling letter dated June 11, 1981, informed petitioner that its Articles of Incorporation did not contain any provisions that provided for the distribution of its assets upon dissolution. Therefore, according to the letter, petitioner did not satisfy Treasury Regulation 1.501(c)(3)-1(b)(4), since there was no requirement that upon dissolution of petitioner, its assets would be dedicated to an exempt purpose. *4 Petitioner, following the proposed adverse ruling letter, amended its *592 Articles of Incorporation. Article III (Corporate Assets) was amended by adding the following Section 3: Section 3. All present or future assets of this corporation shall be used by the corporate administrator/director and/or other qualifying organization under the provisions of Section 501(c)(3) of the IRS Code within the United States of America and it's [sic] possessions for the purpose set forth in Article II above exclusively. Respondent, being of the view that the amendment of Article III did not cure the perceived defect, in an attempt to assist petitioner to comply with the organizational requirement, suggested in a subsequent informational request letter, language that petitioner might use for its dissolution clause as follows: Upon dissolution of this organization any assets remaining after payment of legitimate obligations will be distributed only for purposes or to organizations which are described under section 501(c)(3) of the Internal Revenue Code. Petitioner informed respondent that it believed that it had already complied with the organizational requirement and, therefore, it would not further amend its Articles of Incorporation. *593 The head of petitioner is David Jesse Gilbert (Gilbert), the "Bishop of Stewards and Elders" (Chief Steward). Gilbert is also petitioner's only director, and its president, vice-president, and secretary. Petitioner's corporate documents were signed by Gilbert as Chief Steward, and often co-signed and witnessed by Gilbert under the following pseudonyms: Peter S. Gate, Ray O. Light, and Grace Anne Light. *5 A document signed by Gilbert on Cotober 24, 1980, states the following: The Committee to draft the Corporate Articles recommended that the incumbent Chief Steward assign all his assets and income to the Corporation to eliminate any possibility of a conflict of interest and that he have Life Tenure as founder. It was also recommended that the corporation provide for all his needs and all expenses incurred as Corporate Director which is a full-time function because he is always on duty. The "committee" consisted of Gilbert. On November 27, 1979, in a Nevada application for Certificate of Permission to Perform Marriage, Gilbert stated that he devoted 15 to 25 hours per week to ministerial duties and 5 to 10 hours per week working as an electronic engineering consultant, *594 as well as serving as the "Vice Chairman Citizens' Advisory Council and Deputy Registrar of Voters [Clark County, Nevada]." Petitioner, through Gilbert, published The Ecumenical Times, a monthly letter in which Gilbert sets forth his beliefs and news items bearing on petitioner's objectives. In response to respondent's questions concerning petitioner's functions, Gilbert provided the following answers: 1. (a) How frequently and what location(s) do you conduct religious services? Religious services are held regularly twice daily 8am & 8pm PST at the headquarters Chapel at Shawmut & Exchange Streets in Goodsprings, Nevada, USA. (b) Who conducts the services? Reverend David Jesse Gilbert conducts the services. (c) Do you have a regular membership in attendance at the services? How many? *6 Regular members may come to services or they may pause wherever they are at the designated times and recite our Prayer for Worldwide Peace printed on the back of their membership card. There are 53 members of record. (d) Please elaborate on the prescribed liturgy or order of service. The order of liturgy is in accordance with the biblical teachings and includes verbal *595 prayer, meditation, devotion and worship of the one life spirit within all creation as demonstrated by thought, word, deed and feelings to this recognition which is signified by candle lighting and communion observances. 2. State whether members or worshippers are required to renounce affiliation with other churches or religious sects. NO! Members are encouraged to be Ecumenical which means "Christian above sectarian differences" and follow the "Golden Rule." 3. Please provide details concerning your origins, including your relationship to the Worldwide Peace Movement and Mr. Ray O. Light. Origin is based upon a 'Spiritual Call' as specified in the Bible specificly [sic] in the Book of Saint Mark, Chapter 16, verses 15, 16, 17 and 18 which states that all christians are commanded to go forth and preach the gospel to every creature. This call came while in the service of another organization whose Charter limited itself to an area and therefore inspirational writings under the pen name of Ray Of Light led to the establishment of the Worldwide Peace Movement by the light of the HOLY SPIRIT of the ONE CREATOR. 4. State whether you perform any sacerdotal functions, such *596 as baptisms, wedding ceremonies, and funeral rites. Please give details. Sacerdotal functions are performed as requested or required within the membership only. The details of such functions are the private affair of mutual consent of member and clergy and are not subject to revelation promiscuously. Petitioner is not affiliated with any ecclesiastical body. According to Gilbert, petitioner ordains ministers "predicated *7 upon the commitment by an individual to abide by the command of Jesus Christ and follow the leading of the Holy Spirit of the One Creator." Also, Gilbert indicated that he is assisted by a Council of Stewards, a group consisting of five individuals. These individuals' educational background, according to Gilbert, "has been determined to be adequate to serve as Advisory for their respective expertise * * *. As for the educational and vocational background of David Jesse Gilbert, the incumbent Chief Steward, it must be adequate to fulfill [the objectives of petitioner] or he would not have received this call." The record does not disclose what role -- if any -- the Council of Stewards plays in the operation of petitioner. These individuals did not *597 receive any compensation for serving on the Council of Stewards. Petitioner filed with respondent a Form 990-AR (Annual Report of Private Foundation). For the taxable year 1980, petitioner reported gross revenue of $11,145.00, and total expenses of $10,960.50. Petitioner did not, as requested by respondent and as directed on the Form, provide a schedule delineating the expenses spent on Gilbert's personal needs versus the expenses spent for official use. The Form indicates that petitioner paid no officers any type of compensation. On its Application for Recognition of Exemption, Gilbert stated that petitioner will reimburse part-time volunteers for food, lodging, and transportation expenses that are incurred while working on petitioner's behalf. However, *8 there is nothing in the record which indicates that petitioner reimbursed any employees or volunteers. On May 13, 1982, respondent issued to petitioner a final adverse ruling denying petitioner exempt status under section 501(c)(3), the material portion of which is set out above. OPINION We must decide whether petitioner has met the organizational and operational tests of section 501(c)(3). *598 Section 501(a) provides, inter alia, an exemption from Federal income tax for an organization described under section 501(c)(3). That section enumerates three conjunctive requirements which an organization devoted to religious purposes must satisfy if it is to qualify for tax exemption: (1) the organization must be organized and operated exclusively for religious purposes or in conjunction with other exempt purposes; (2) no part of its net earnings may inure to the benefit of any private shareholder or individual; and (3) no substantial part of its activities may be devoted to political or lobbying activity. If an organization fails to meet either the organizational test or the operational test it is not exempt for purposes of section 501(a). Basic Bible Church v. Commissioner,74 T.C. 846, 856 (1980); Levy Family Tribe Foundation v. Commissioner,69 T.C. 615, 618 (1978); section 1.501(c)(3)-1(a)(1), Income Tax Regs.
The organizational test is described at section 1.501(c)(3)-1(b), Income Tax Regs. *599 An organization is organized *9 exclusively for one or more exempt purposes only if its articles of organization limit the purposes of such organization to one or more exempt purposes and do not expressly empower the organization to engage in substantial nonexempt activities. Section 1.501(c)(3)-1(b)(1)(i), Income Tax Regs. The presence of a single nonexempt purposes, if substantial in nature, will destroy the exemption regardless of the number or importance of truly exempt purposes. Better Business Bureau v. United States,326 U.S. 279 (1945); Copyright Clearance Center v. Commissioner,79 T.C. 793 (1982). In addition, an organization is not organized exclusively for one or more exempt purposes unless its assets are dedicated to an exempt purpose. Section 1.501(c)(3)-1(b)(4), Income Tax Regs. An organization's assets are considered dedicated to an exempt purpose if upon dissolution such assets would, by reason of a provision in the organization's articles or by operation of law, be distributed for one or more exempt purposes. *600 An organization does not meet the organizational test if its articles or the law of the State in which it was created provide that its assets would, upon dissolution, be distributed to its members or shareholders. Section 1.501(c)(3)-1(b)(4), Income Tax Regs.
In the instant case, on at least two occasions, respondent informed petitioner in writing of the type of clause it needed to insert in its Articles. However, petitioner did not insert the necessary clause. Furthermore, under Nevada State law, a nonprofit *10 corporation upon dissolution, after winding up its business and paying its debts, divides "the residue of its money among the members, share and share alike." Nev. Rev. Stat. Sec. 81.280 (1979). Thus, neither under Nevada law nor under petitioner's Articles is provision made for the requisite distribution of its assets upon dissolution. Accordingly, petitioner fails to satisfy the organizational test of section 501(c)(3). This deficiency is fatal to petitioner's application for tax exempt status. General Conference of the Free Church of America v. Commissioner,71 T.C. 920 (1979). *601 [2]
In addition, petitioner has not satisfied the operational test of section 501(c)(3). Section 1.501(c)(3)-1(c)(2) and (d)(1)(ii), Income Tax Regs; provides in pertinent part that: (2) Distribution of earnings. An organization is not operated exclusively for one or more exempt purposes if its net earnings inure in whole or in part to the benefit of private shareholders or individuals. For the definition of the words "private shareholder or individual," see paragraph (c) of sec. 1.501(a)-1. [Sec. 1.501(c)(3)-1(c)(2)] (Ii) An organization is not organized or operated exclusively for one or more of the purposes specified in subdivision (i) of this subparagraph unless it serves a public rather than a private interest. Thus, to meet the requirement of this subdivison, it is necessary for an organization to establish that it is not organized or operated for the benefit of private interests such as designated individuals, the creator or his family, shareholders of the organization, or persons *602 controlled, directly or indirectly, by such private interests. [Sec. 1.501(c)(3)-1(d)(1)(ii)] *11 At the outset, we note that petitioner provided cryptic and often unresponsive answers to respondent's requests for information. What we can glean from the administrative record is that petitioner was founded by Gilbert. Gilbert is petitioner's only decision maker, and he controls all aspects of petitioner's operations. He is not checked by any ecclesiastical body or group of advisors. Included within Gilbert's control is petitioner's finances. Respondent attempted to determine exactly what amount of petitioner's assets was used for official business and what amount was used for Gilbert's personal purposes. Petitioner did not provide respondent with this information. The burden of proof in section 7428 actions is on petitioner. Rule 217(c)(2). Assuming that it was able to do so, "[p]etitioner had ample opportunity during the administrative procedure to submit facts which would establish its qualifications for tax exempt status." Basic Bible Church v. Commissioner,supra at 855. *603 Petitioner has not satisfied its burden. Petitioner did not establish that it is not operated for the benefit of private interests, such as Gilbert. On the contrary, the administrative record indicates otherwise. Therefore, because petitioner has not, on the basis of the administrative record before us, satisfied either the *12 organizational or operational tests of section 501(c)(3), respondent must be sustained. [3]
Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. All rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.↩
2. See also Parshall Christian Order v. Commissioner,T.C. Memo. 1983-11↩.
3. In view of our decision, we need not consider the other grounds advanced by respondent for denial of exemption.↩