T.C. Memo. 2007-49


UNITED STATES TAX COURT


FAMILIES AGAINST GOVERNMENT SLAVERY, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 23936-05X.          Filed March 5, 2007.


Percy Roy Matthews II (an officer), for petitioner.

<u>Mark A. Weiner</u>, for respondent.


MEMORANDUM OPINION

SWIFT, <u>Judge</u>:  This is an action for section 7428 declaratory relief relating to respondent's denial of petitioner's request for recognition as a section 501(c)(3) tax-exempt organization.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for 2005, and all Rule references are to the Tax Court Rules of Practice and Procedure.

## Background

The administrative record was submitted to the Court under Rule 217(b)(1).

On May 23, 2003, there were filed with the secretary of state of the State of California on petitioner's behalf articles of incorporation as a California nonprofit public benefit corporation.

In petitioner's articles of incorporation, petitioner's corporate purpose is stated to be the education of the public about "injustices to minority [A]mericans" and about "peacefully fight[ing] for freedom."

On June 16, 2003, there was filed with the Franchise Tax Board of the State of California an application on petitioner's behalf for exemption from California income tax. On the application, petitioner's primary purpose is described as public education.[1]

On September 5, 2003, petitioner mailed to respondent a Form 1023, Application for Recognition of Exemption under Section 501(c)(3) of the Internal Revenue Code. On its Form 1023, petitioner's primary purpose is described generally as follows:

> To expose slavery and make freedom, liberty, and
> justice truly meaningful for all.

---

[1]The record does not indicate whether petitioner's application for exemption from California income tax was granted.

As described in the documents petitioner submitted to respondent, petitioner's activities consist primarily of public protests or demonstrations that are made solely by petitioner's founder, Mr. Matthews, in order to educate the public as to the alleged slavery and entrapment of Hollywood celebrities by Government officials.[2]

Language in the documents that Mr. Matthews distributes to the public at the referred-to demonstrations alleges that the Federal Bureau of Investigation kidnaps Hollywood celebrities and that law enforcement personnel and private gangs are joined in a conspiracy to kill, trap, and enslave Hollywood celebrities and minorities "to gain more financial support" and to engage in activities that petitioner describes as "blood sport". Language in petitioner's documents also alleges that Government-sponsored welfare and housing programs force minority women to participate in the above alleged conspiracy.

From January 30 to March 10, 2004, respondent's exempt organizations specialist made a number of requests of petitioner for evidence supporting the above conspiracy allegations. The documents petitioner submitted to respondent, however, contain

[2]In the documents submitted to respondent and distributed to the public, petitioner utilizes repeatedly and without permission the names of Hollywood celebrities. To protect the privacy of these celebrities and because their names are irrelevant to our opinion, we do not identify their names.

only irrelevant, unintelligible, and inflammatory statements, nonsensical distortions, and irrelevant photographs.[3]

On August 4, 2004, respondent's Exempt Organizations Division mailed to petitioner a proposed denial of petitioner's requested tax-exempt status, concluding that petitioner had not established that petitioner operates exclusively for educational or any other exempt purpose.

On August 30, 2004, petitioner requested a hearing with respondent's Appeals Office relating to the proposed denial of petitioner's tax-exempt status.

From September 2004 to September 2005, respondent's Appeals Office gave petitioner the opportunity to submit additional documents relating to the alleged conspiracy that formed the content of petitioner's purported educational activities. Petitioner, however, only submitted additional documents similar to the documents petitioner had earlier submitted to respondent.

In total, petitioner submitted to respondent more than 1,000 pages of documents consisting largely of nonsensical, emotionally charged, and incomprehensible allegations.

On September 22, 2005, respondent's Appeals Office mailed to petitioner a final denial of petitioner's requested tax-exempt

---

[3]For example, documents petitioner submitted assert that because a church located in the neighborhood of the home of Mr. Matthews placed the title of a sermon, "Dead Man Walking," on its church marquee, someone was trying to threaten the life of Mr. Matthews.

status under section 501(c)(3). Respondent concluded that petitioner sought to present to the public only unsupported opinions of Mr. Matthews.

On December 19, 2005, petitioner filed with the Court a petition requesting section 7428 declaratory relief as to petitioner's tax-exempt status under section 501(c)(3).

## Discussion

In reviewing under section 7428 respondent's denial of an organization's application for initial qualification for section 501(c)(3) tax-exempt status, we ordinarily review only the administrative record. Rule 217(a); Natl. Association of Am. Churches v. Commissioner, 82 T.C. 18, 19-20 (1984).

To qualify for Federal income tax-exempt status under section 501(c)(3) as an educational organization, an organization must, among other things, operate exclusively for educational purposes (operational test). Sec. 1.501(c)(3)-1(a), Income Tax Regs.

To meet the operational test, an organization must further educational purposes and not further substantial nonexempt purposes. Nationalist Movement v. Commissioner, 102 T.C. 558, 576 (1994), affd. 37 F.3d 216 (5th Cir. 1994); sec. 1.501(c)(3)-1(c)(1), Income Tax Regs.

Educational purposes include activities that instruct or train individuals to improve or develop their capabilities and

that instruct the public on subjects useful to individuals and beneficial to the community. <u>Am. Campaign Acad. v. Commissioner</u>, 92 T.C. 1053, 1064 (1989); sec. 1.501(c)(3)-1(d)(3)(i), Income Tax Regs. Educational purposes do not include activities principally involving the presentation of unsupported opinion. Sec. 1.501(c)(3)-1(d)(3)(i), Income Tax Regs.

In determining whether an opinion is unsupported, respondent primarily examines the method used to develop the opinion. In Rev. Proc. 86-43, sec. 3.03, 1986-2 C.B. at 730, respondent identifies four factors to be considered in evaluating whether an opinion is to be regarded as unsupported, as follows:

(1) Whether viewpoints or positions taken are factually unsupported;

(2) Whether facts are distorted;

(3) Whether inflammatory and disparaging material is utilized based more on strong emotional feelings than on objective evaluations; and

(4) Whether the organization fails to provide background information that would allow the public to understand and to evaluate the material.[4]

---

[4]In 1980, the Court of Appeals for the D.C. Circuit held that respondent's definition of "educational" as found in sec. 1.501(c)(3)-1(d)(3)(i), Income Tax Regs., was unconstitutionally vague. <u>Big Mama Rag, Inc. v. United States</u>, 631 F.2d 1030, 1039-1040 (D.C. Cir. 1980). Three years later, the Court of Appeals for the D.C. Circuit upheld respondent's denial of an organization's requested tax-exempt status in which respondent had used certain factors in applying sec. 1.501(c)(3)-1(d)(3)(i), Income Tax Regs. <u>Natl. Alliance v. United States</u>, 710 F.2d 868, 874-876 (D.C. Cir. 1983). In Rev. Proc. 86-43, 1986-2 C.B. 729,

(continued...)

The documents that petitioner presents to the public through Mr. Matthews are full of unsupported opinions and distorted facts. Petitioner's presentations and documents use inflammatory language and emotional and irrelevant statements. Factors one, two, three, and four of Rev. Proc. 86-43, supra, clearly apply to the activities of petitioner.

Because petitioner's activities appear principally to involve the presentation to the public of unsupported opinions, petitioner's activities do not further educational purposes under the operational test. On the record before us, petitioner does not qualify for tax-exempt status under section 501(c)(3) as an educational organization.

Even apart from the criteria of Rev. Proc. 86-43, supra, petitioner's activities do not qualify as educational under the generally accepted use of that term. See Natl. Alliance v. United States, 710 F.2d 868, 873, 875 (D.C. Cir. 1983).

Petitioner's vague claims for qualification as a section 501(c)(3) tax-exempt organization on the grounds that it operates for charity and for the prevention of cruelty to children

---

[4](...continued)
respondent set forth the factors that respondent had utilized in Natl. Alliance. See Chief Counsel Advice 200620001 (May 9, 2006).

The Tax Court has held that Rev. Proc. 86-43, supra, is constitutional. Nationalist Movement v. Commissioner, 102 T.C. 558, 588-589 (1994), affd. on other grounds 37 F.3d 216, 218 (5th Cir. 1994).

similarly are totally unsupported by the record herein.  Further, petitioner acknowledges in its application for section 501(c)(3) tax-exempt status that petitioner would engage in legislative and political activities generally not allowed for section 501(c)(3) organizations.  Sec. 1.501(c)(3)-1(c)(3)(i), (ii), and (iii), Income Tax Regs.

Petitioner argues that, by deciding the issue before us only on the administrative record, we prevent petitioner from submitting additional evidence in support of petitioner's tax-exempt activities.

Both respondent's Exempt Organizations Division and respondent's Appeals Office informed petitioner of the types of evidence that might satisfy the requirements of Rev. Proc. 86-43, supra, and petitioner had more than ample opportunity to submit whatever evidence it had available.  Petitioner instead chose to submit to respondent more than 1,000 pages of incomprehensible documents.  On the record before us, it is reasonable to hold petitioner to the administrative record.  Petitioner has not shown good cause for doing otherwise.  See Rule 217(a).

We sustain respondent's denial of petitioner's request for tax-exempt status.

> Decision will be entered
> upholding respondent's
> determination.